T.C. Summary Opinion 2010-88

UNITED STATES TAX COURT

RICHARD G. AND SUZUN J. ABBOTT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22749-09S.                    Filed June 29, 2010.

Richard G. and Suzun J. Abbott, pro sese.

<u>Richard W. Kennedy</u>, for respondent.

GERBER, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2007, the taxable year in
issue.

this opinion shall not be treated as precedent for any other case.

Respondent determined a $767 deficiency in petitioners' 2007 Federal income tax based on three adjustments:  (1) Cancellation of indebtedness income--$4,753; (2) failure to report a State of Utah tax refund--$216; and (3) premature withdrawal of a pension, along with a section 72(t) 10-percent additional tax.[2]  We consider whether petitioners had income from cancellation of indebtedness and a State income tax refund for 2007.

### Background

Petitioners resided in Utah at the time their petition was filed.  Petitioners claimed a $2,759 deduction for Utah State income tax as part of the itemized deductions claimed on Schedule A, Itemized Deductions, of their 2006 joint Federal income tax return.  Petitioners paid $800 in 2006 Utah State income tax sometime during 2007 and received a $216 refund of 2006 Utah State income tax in 2007.  Petitioners did not include the $216 in income on their 2007 Federal tax return.  Petitioners did not itemize deductions on their 2007 Federal tax return.  Respondent determined that petitioners must include the $216 in income for their 2007 tax year.

---

[2]Petitioners conceded the premature withdrawal and related additional tax adjustment.

Petitioner Suzun J. Abbott (Mrs. Abbott) borrowed money from Commonwealth Central Credit Union (Commonwealth), a California corporation. On account of her poor financial condition Mrs. Abbott stopped making payments on the loan from Commonwealth during 2003 when her loan balance was $4,753.43. Mrs. Abbott turned her financial matters over to Homeland Financial Services, Inc. (Homeland), to act on her behalf with respect to resolving her debts with various creditors.

During 2003 and 2004 Commonwealth placed Mrs. Abbott's loan in delinquent status and attempted collection. Her loan was placed in "defaulted status" during 2004. Commonwealth canceled Mrs. Abbott's outstanding debt of $4,753.43 during 2007 and issued her a Form 1099-C, Cancellation of Debt, reflecting cancellation of debt in that amount. It was Commonwealth's approach to extinguish or cancel debt when no payment was received for 3 years and the obligation was no longer collectible. Petitioners did not report the $4,753.43 in income on their 2007 tax return. Respondent determined that the $4,753.43 was income from cancellation of indebtedness for petitioners' 2007 tax year.

## Discussion

Initially, we address petitioners' contention that the burden of proof should be shifted to respondent under section 7491. Respondent contends that petitioners did not comply with

the prerequisites of section 7491 and that the burden did not shift.

Section 7491(a) shifts the burden to the Commissioner where taxpayers can show that they complied with substantiation requirements, maintained required records, and generally cooperated with the Commissioner.  Petitioners did not provide documents or substantiation to respondent or the Court in support of their positions.  Because those requirements were not met, the burden remains on petitioners to show that respondent erred in the determination of the 2007 income tax deficiency.

Petitioners contend that they are not required to include in income on their 2007 Federal tax return the $216 Utah State income tax refund received in 2007.  Petitioners refer the Court to material concerning the "tax benefit rule" and respondent's instructions and forms for computing the amount of State tax refund includable in income.  Respondent agrees that the tax benefit rule applies, but contends that under that rule petitioners are required to include the $216 in their 2007 income.

The tax benefit rule provides that if an amount is deducted from income in one year and a part or all of the amount is recovered in a later year, then the recovery is treated as income in the year received to the extent the deduction reduced the amount of tax imposed.  Sec. 111(a); <u>Francisco v. Commissioner</u>,

119 T.C. 317, 333-334 (2002), affd. 370 F.3d 1228 (D.C. Cir. 2004); Kadunc v. Commissioner, T.C. Memo. 1997-92; see Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 377 (1983). Because petitioners deducted Utah State income tax on their 2006 Federal return, the $216 refund of Utah State tax received in 2007 is includable in income on their 2007 Federal tax return.

Petitioners make two arguments. First, they argue that the $216 refund should be includable only if they claimed a deduction for Utah State income tax during or for 2007, which they did not. Second, they argue that payment of $800 of their 2006 Utah State income tax and the receipt of the refund both occurred in the same year--2007. Both of petitioners' arguments concern the matching of the deductions and income in the same accounting period. That, however, is not how the tax benefit rule works. Because petitioners received a benefit by deducting Utah State income tax on their 2006 Federal tax return, petitioners must include any refund (for which they had received a prior year benefit) of the Utah State income tax received during 2007 in income on their 2007 Federal tax return irrespective of whether they claimed a Utah State income tax deduction on their 2007 Federal return. Accordingly, we hold that petitioners should have included the $216 Utah State income tax refund in income on their 2007 Federal return.

Cancellation or discharge of indebtedness results in includable income in the year of the cancellation. Sec. 61(a)(12); <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1 (1931). Section 108 provides for certain circumstances where income from the cancellation of indebtedness may be excluded from gross income. Petitioners argue that the debt here was effectively canceled during 2003 or 2004 and not during 2007. They also contend that Homeland had consolidated Mrs. Abbott's debt and reached some agreement with Commonwealth before 2007. Petitioners do not rely on the provisions of section 108.

Commonwealth canceled Mrs. Abbott's debt in 2007, 3 years after she stopped making payments and the obligation was classified as in default. Respondent contends that petitioners failed to offer any independent evidence showing that the Commonwealth debt was settled or written off before 2007. Respondent also argues that Commonwealth's approach to writing off debt after 3 years is in accord with California State law.

Commonwealth was a California corporation, and the law of that State provides that suit to enforce a written obligation must be commenced within 4 years of the default. Cal. Civ. Proc. Code sec. 337 (West 2006). Further, where a debt is payable in monthly installments, the period of limitations on enforced collection begins to run on each installment from the time action could have been instituted. <u>Bissell v. Forbes</u>, 82 P. 698 (Cal.

Ct. App. 1905). Commonwealth's actions in this case are in accord with the above-referenced statutory provision and case precedent.

Petitioners' argument that Homeland resolved the Commonwealth obligation before 2007 fails for lack of credible evidence supporting their contention. The record shows that Commonwealth issued a Form 1099-C and did not extinguish or cancel the indebtedness before 2007. Accordingly, petitioners were obligated to report the income from cancellation of indebtedness.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.